**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-01553-RM-SKC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

8.11 ACRES OF LAND, MORE OR LESS
IN THE COUNTY OF GRAND, COLORADO; and
LAMBRIGHT, LLC, et al.,

    Defendants.

_____

**ORDER**
_____

This action has been filed by the United States under its powers of eminent domain on behalf of the Western Area Power Association in connection with the Granby Pumping Plant - Windy Gap Transmission Line Rebuild project. The United States condemned approximately 8.11 acres that are a part of a larger parcel of land (the "Larger Parcel") owned by Defendant Lambright, LLC ("Lambright") in Grand County, Colorado. Before the Court now is Lambright's Motion to Limit Testimony of Gregory T. Gerken (ECF No. 68) filed pursuant to Fed. R. Evid. 702 and 403.

    **I.    BACKGROUND**

The parties are well versed with the background of this case so it will not be repeated here. In summary, at issue in this case is just compensation for the property taken by the United States which expands a pre-existing powerline. In a partial taking, when the United States

acquires only part of a unitary holding, just compensation must reflect not only the property interest acquired, but also any compensable change in the value of the remainder. *United States v. Miller*, 317 U.S. 369, 376 (1943).

Mr. Gerken is the United States' expert witness. Lambright seeks to exclude Mr. Gerken's opinion that the new powerline did not reduce the value of the remainder of the Larger Parcel at all. Relying on several arguments, Lambright contends Mr. Gerken's opinion is excludable under Fed. R. Evid. 702 and 403.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 ("Rule 702") requires a district court to ensure that an expert's testimony is admitted only if it is reliable and relevant. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). To do so, the court follows three steps.

First, the court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp*, 918 F.3d at 770 (quoting Rule 702).

Next, if the expert is sufficiently qualified, the court "'must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.'" *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). In doing so, the court considers 1) whether "the testimony is based on sufficient facts or data"; 2) whether it "is the product of reliable principles and methods"; and 3) whether "the expert has reliably applied the principles and methods to the facts of this case." Fed. R. Evid. 702(b)-(d).

There are many factors which may bear on whether expert testimony is based on sound methods and principles, including the following: "whether the theory or technique has (1) been or can be tested, (2) been peer-reviewed, (3) a known or potential error rate, (4) standards controlling the technique's operation, and (5) been generally accepted by the scientific community." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016). "'The focus, of course, must be solely on principles and methodology, not on the conclusions they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). And, where a court concludes there is too great an analytical gap between the data and opinion offered, it is not required to admit such opinion evidence. *Schulenberg v. BNSF Railway Co.*, 911 F.3d 1276, 1283 (10th Cir. 2018).

Finally, after reliability, the court evaluates whether the testimony is relevant. "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. That is, whether the testimony properly "fits" in the case. "'Fit is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *Etherton*, 829 F.3d at 1223 (quoting *Daubert*, 509 U.S. at 591).

Where the expert testimony meets the standards of Rule 702, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "[G]aps or inconsistencies in an expert's reasoning may go to the weight of the expert evidence, not to its admissibility." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006). Moreover, the proponent of the testimony "need not prove that the expert

is undisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). "[I]t is the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute, and not asymptotic perfection, that renders testimony both reliable and relevant." *Bitler*, 400 F.3d at 1234.

The trial court has discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp.*, 918 F.3d at 770 (emphasis in original). A *Daubert* hearing is not mandated. *Id.*

### III. ANALYSIS

Mr. Gerken identified the subject property's highest and best use before and after the taking as a continuation of the existing agricultural and recreational ranch uses, with subdivision potential. He opined that there was no diminution in the market value to the remainder of the Larger Parcel after the government's acquisition of the 100-foot expanded easement, aside from diminution attributable to the physical footprint of the easement. Mr. Gerken based his opinion on a journal article (the "Article") concerning high voltage overhead transmission lines ("HVOTLs"); sales data from Adams County; interviewing market participants; and his overall experience and knowledge of powerlines. Pursuant to Rule 702, Lambright challenges Mr. Gerken's methodology and his application of that methodology. In addition, Lambright seeks exclusion of Mr. Gerken's testimony pursuant to Fed. R. Evid. 403. The Court addresses these arguments in turn.

### 1. *The HVOTL Article*

The Article is a review of various literature since 2010 regarding the impact of HVOTLs on property values. The Article discusses various categories of the literature (statistical price models, survey-based research, public perception research, and other research methods)); summarizes the various literature considered; and reaches its own conclusion based on such literature. (ECF No. 68-1, pp. 150-163.) That conclusion provides "the most recent conclusions remain…consistent with the literature before 2010. Survey-based research finds adverse perceptions and general dislike for HVOTLs, but sales data reveals little to no diminution in prices." (ECF No. 68-1, p. 192.)

Lambright contends Mr. Gerken's use of the Article is improper because it expressly disclaimed its applicability in eminent domain cases and cautioned against generalizing from its context-dependent conclusions, and he cherry-picked from the studies in the Article. Thus, according to Lambright, the Article does not support Mr. Gerken's conclusion and his opinion is unreliable. The Court finds otherwise.

The Article's disclaimer states "[i]t is important to note that this literature does not generally apply to the taking of an easement for an HVOTL, but rather only to the damages, if any, due to proximity to an existing HVOTL." (ECF No. 681-1, p. 151.) The parties disagree over the interpretation, and therefore the applicability, of this disclaimer. Lambright contends this language is unambiguous and precludes the Article from being considered by Mr. Gerken in his analysis. The United States counters this language could be read to apply to a "taking plus damages" method of valuation used primarily under state law.

The Court finds the Article was properly and reliably considered for several reasons. First, as stated, just compensation must reflect not only the property interest acquired, but also any compensable change in the value of the remainder. *Miller*, 317 U.S. at 376. As the United States contends, the disclaimer relates to valuation of the part taken for the easement. Next, while this case involves a taking for an easement, it is a taking to expand a pre-existing easement. Third, Lambright focuses on the "damages…due to proximity to an <u>existing</u> HVOTL" (ECF No. 83, p. 4[1] (emphasis in original)) arguing this contemplates that HVOTLs are already in place. But, here, there *were* existing HVOTLs in place, albeit with a smaller footprint. Fourth, based on the Court's understanding of David Clayton's (Lambright's expert) opinion, his compensation analysis also relies on studies of the impact on the value of properties due to proximity of electric transmission lines, the very issue the Article discusses. Thus, Lambright's disagreement as to the applicability of the Article fails to provide a sufficient basis to find Mr. Gerken's opinions unreliable.

Lambright's arguments concerning Mr. Gerken's alleged "cherry picking" from the studies within the Article or his generalizations from context-dependent conclusions fare no better. First, the Court's review of the record shows *Lambright* cherry-picks from Mr. Gerken's testimony and his report. For example, Mr. Gerken did not simply say "I don't know" as to why he relied on the Article. Similarly, Mr. Gerken said "several of the studies" in the Article "are particularly meaningful," and gave three examples. (ECF No. 68-1, pp. 114-116.) Mr. Gerken did respond that "we have to take these studies in general … But I think … it does

---

[1] Unless indicated otherwise, the page references are to the page number in the document and not to the page number assigned to the document by the court's CM/ECF system.

support the overall body of literature out there." (ECF No. 68-3, 269:4-15.) Lambright's argument here is a disagreement as to what Mr. Gerken's report focused on from the Article. But, as the United States argues, Mr. Gerken considered the Article's data in light of its overall conclusion – that "[s]urvey-based research finds adverse perceptions and general dislike of HVOTLs, but sales data reveals little to no diminution in prices." (ECF No. 68-1, p. 192.) A conclusion which was based on all the studies the Article considered (including those Mr. Gerken focused on), with their differences as to methodology, location, types of properties, number of properties surveyed, and other factors, while recognizing that "[a]ll studies are difficult to generalize." (*Id.*) If, as Lambright contends, Mr. Gerken focused on some studies but should have considered others or other matters in the Article, this argument goes to the weight to be afforded his testimony, not its admissibility. Accordingly, the Court finds Mr. Gerken's reference to the Article is a reliable methodology and his use of the Article is consistent with reliable appraisal practices.

   2. *The Adams County Sales*

Mr. Gerken conducted a paired sales study of four properties in Adams County affected by powerlines to determine whether and how proximity to powerlines impacts property values. Lambright argues that Mr. Gerken's Adams County research is an unreliable basis from which to conclude anything about the new powerline's effect on the value of the subject property based essentially on two arguments: Mr. Gerken's supposed "admissions" and his reliance on a "solitary anecdote" from a single Grand County property owner. The United States counters that Mr. Gerken acknowledged limitations with the Adams County case study but did not concede that his study is unreliable; that any limitations did not render his study unreliable; and that Mr.

7

Gerken looked for other recent sales in the Grand County area but could not find adequate data to complete a study. Accordingly, the United States contends, Mr. Gerken's opinions meet the standard of Rule 702. The Court agrees.

First, the Court's review of the records shows no admission of unreliability by Mr. Gerken as to his case study. Next, Mr. Gerken did acknowledge some limitations in his study, e.g., no "exact applicability" as to Sale 2 in Adams County. Similarly, Mr. Gerken acknowledged that Adams County Sale1A is not "comparable in any way to mountain resort property," but he explained that his analysis was a comparison of property value due to proximity to a powerline. As "asymptotic perfection" is not required, *Bitler*, 400 F.3d at 1234, the Court finds such limitations do not render Mr. Gerken's methodology or application thereof unreliable.

To the extent Lambright contends Mr. Gerken chose Adams County (rather than Grand County) for his case study arbitrarily, the record does not support such position. As the United States has shown, Mr. Gerken found insufficient data to complete a study in Grand County.

Finally, contrary to Lambright's contention, Mr. Gerken relied on more than a single conversation for his opinion. Mr. Gerken's report shows conversations with the buyer and seller of Sale 1 in Grand County, and a conversation with the listing broker on Sale 2 in Adams County. (ECF No. 68-1, pp. 77, 118.) And, Mr. Gerken clarified during this deposition that he had conversations with the buyers of Sales 3 and 5 from Grand County. The persons with whom Mr. Gerken had conversations advised that the powerlines had no effect on the value of the property that was sold and purchased. The United States argues that market participant

interviews are a reliable basis for an appraiser's expert opinion and Lambright has not shown otherwise.

In summary, Mr. Gerken's methodology and underlying reasoning are reliable and otherwise meet the standards under Rule 702. Any analytical "gap" is not too large; instead, any gaps here go to the weight of the expert evidence, not to its admissibility. *Cook*, 580 F. Supp. 2d at 1085.

### 3. *Mr. Gerken's Experience*

Mr. Gerken's opinions also rely on his professional experience. Lambright argues Mr. Gerken (1) lacks the "necessary experience" to opine on value in this case because he has "never signed an appraisal concerning a power line condemnation"; and (2) relied on that inadequate experience to conclude the new powerline will not decrease the subject property's value and that such conclusion is nothing more than a hunch. The United States, of course, argues otherwise.

Starting with Lambright's first argument that Mr. Gerken is not qualified, the Court's review finds this to be without merit. Mr. Gerken's qualifications as a professional real estate appraiser are fully set forth in his report (ECF No. 68-1, p. 128). The fact that Mr. Gerken has never "*signed*" an appraisal concerning a powerline condemnation does not establish to the contrary where he has shown experience in appraisals for the taking of other types of easements. As the United States argues, in every appraisal where a property is encumbered by an easement, the appraiser must determine whether that encumbrance affects the value of the property. Lambright cites no legal authority or makes no showing to persuade the Court otherwise.

As to Lambright's argument that Mr. Gerken's opinion is based on just a "hunch" the record shows it is not so. Instead, as discussed, Mr. Gerken's opinion is based on data and

information that are customarily used, such as the Article and paired sales which the Court has found sufficient under Rule 702. That Lambright disagrees with Mr. Gerken's conclusions based on his analysis, on which he obviously relied upon his experience, does not render the opinion inadmissible.

### 4. *Rule 403*

Pursuant to Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." Lambright argues the probative value of Mr. Gerken's valuation opinion is substantially outweighed by unfair prejudice because of the alleged "disconnect" between his intuition and the data. This argument is based on the above arguments Lambright made and the Court has rejected, e.g., that the opinion is not supported by the Article. As such, Lambright's argument here is rejected for substantially the same reasons why his other arguments were rejected.

This brings the Court to Lambright's final argument of unfair prejudice due to an "imbalance" of experts, i.e., if the Court allows the United States' expert to testify but not Lambright's expert there would be an imbalance of expert testimony. The Court does not read Rule 403 to require a balancing of experts. Instead, the Court balances the probative value of the challenged evidence against the danger of unfair prejudice.

"To be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403 advisory committee's note). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *Id.* (quotation marks and citation omitted). Mr. Gerken's testimony here has

probative value and will not invoke passions or the like against Lambright. Lambright's real concern is that, depending on how the Court rules on the United States' *Daubert* motions,[2] the jury may hear more expert evidence from the United States than from Lambright. But even assuming this was true, *more* probative evidence is not *unfair prejudice* under Rule 403.

IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that the Motion to Limit Testimony of Gregory T. Gerken (ECF No. 68) is DENIED.

DATED this 5th day of August, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[2] The Court has ruled on the United States' *Daubert* motions and has place some limitations on Mr. Clayton's expert testimony.